**Dramatists Legal Defense Fund**

President
John Weidman

Vice President
F. Richard Pappas, Esq.

Secretary
J. T. Rogers

Treasurer/Executive Director
Ralph Sevush, Esq.

Board Members
Lydia Diamond
Mara Isaacs
Sarah Ruhl
Laurence Sorkin

Of Counsel
David H. Faux, Esq.

General Manager
Claudia Stuart

Administrator
Amy VonVett

February 17, 2017     VIA ECF
Honorable Alvin K. Hellerstein
United States District Court
Southern District of New York
Room 1050
United States Courthouse
500 Pearl Street
New York, NY 10007

Re:    *Matthew Lombardo and Who's Holiday LLC v. Dr. Seuss Enterprises, L.P.*, SDNY No. 16-09974

Letter of *Amicus Curiae* Dramatists Legal Defense Fund in Opposition of Partial Motion to Dismiss

Dear Judge Hellerstein:

      The Dramatists Legal Defense Fund (the "DLDF") respectfully submits this letter as *amicus curiae* opposition to the *partial motion to dismiss*, filed by Defendant, and to apprise the Court of the underlying policy considerations implicated by the pending decision. The DLDF was unable to obtain consent of Defendant's counsel to submit this letter. We humbly request permission to submit this letter in lieu of a more formal brief in opposition to Defendant's Partial Motion to Dismiss.

      In brief, recent case law indicates that the owner of copyrightable material must have a good faith belief that use of the material is not authorized under fair use. Should the court determine that Plaintiff's use of the *How the Grinch Stole Christmas!* (the "Underlying Work") was, e.g., transformative, then the court may also analyze whether Dr. Seuss Enterprises, L.P. formed the proper, subjective belief about the dramatic work's fair use. If the Defendant did not, then tortious interference is properly invoked. Therefore, to dismiss any claim for tortious interference at this juncture would be premature.

**Interest of the DLDF**

The DLDF was established in 2009 to advocate for free expression in the dramatic arts as guaranteed in the First Amendment of the United States Constitution, and to encourage the vitality of a robust public domain, in support of the purpose of the Constitution's "Copyright Clause." The DLDF is governed by an elected Board of Directors that currently includes such

1501 Broadway
Suite 701
New York, NY 10036
Tel: 646.360.1106
Fax: 212.944.0420
www.dldf.org

renowned dramatists as Sarah Ruhl (*In the Next Room*), Lydia Diamond (*Stick Fly*), J.T. Rogers (*Oslo*) and the current President, John Weidman (*Assassins, Contact, Anything Goes*). The Board also includes several lawyers who are well established within the theater industry.

The sole member of the DLDF is The Dramatists Guild of America, Inc.., a century-old trade association with a governing board of playwrights and musical theater authors that includes Marsha Norman (*The Color Purple, 'Night Mother*), Stephen Sondheim (*Sweeney Todd, Company*), Tony Kushner (*Angels in America*), John Guare (*House of Blue Leaves, Six Degrees of Separation*), and Stephen Schwartz (*Wicked, Godspell, Pippin*), among many of the other leading dramatists of the American theatre. The current president of the Guild is Doug Wright (*Grey Gardens, Hands on a Hardbody, War Paint*).

Matthew Lombardo is a member of the Guild, but the DLDF's interest in this case transcends the interest of this particular author, since the Court's holding could have serious consequences for playwrights generally.

**Fair Use Is a Threshold Issue to Tortious Interference**

In Defendant's memorandum of law supporting the partial motion to dismiss, the elements for tortious interference, as laid out, clearly invoke the intention of the allegedly interfering party. For tortious interference with contractual relations, the Court must consider "(3) the defendant's <u>intentional</u> procurement of the third-party's breach of the contract <u>without justification</u>." *Altseekers, Inc. v. BrandForce SF, LLC*, No. 12-cv-5392, (EDNY 2015). (Emphasis added.) "Alternatively, to state a claim for <u>intentional</u> 'interference with prospective economic advantage'" one of the elements of proof is whether "'the defendants acted <u>for a wrongful purpose</u> or used dishonest, unfair, or improper means.'" *Defendant's Brief in Support* at 10. (Emphasis added.) Therefore, the Defendant's intention is central to the claim of tortious interference.

One cannot characterize accurately the Defendant's intention without knowing whether it considered fair use in good faith. In short, if Plaintiff's use of the Underlying Work was clearly fair use, then Defendant's actions were clearly tortuous; if Plaintiff's use of the Underlying Work was clearly NOT fair use, then Defendant's actions were clearly NOT tortuous. Without the Court's determination on the question of fair use, it is premature to dismiss a claim for tortious interference.

**The Connection between Fair Use and Tortious Interference**

Even the analysis of fair use involves analysis of whether Defendant's actions were made in good faith. The recent case law mentioned above arose when Lenz posted a 29-second video of her child dancing to Prince's song, "Let's Go Crazy." Universal, representing Prince's interests, went through the notice-and-takedown process for online infringements outlined under the Digital Millennium Copyright Act (the "DMCA"), arguing that both Ms. Lenz and the streaming service are unauthorized to use the protected material. Lenz denied that her use was infringing and filed for a declaratory judgment.

After reviewing the public policy and four-factor test involved with the typical fair use case, the Ninth Circuit stopped short of a full-blown factor-by-factor analysis, focusing on a section of the DMCA requiring "a good faith belief" that use of the material is not authorized, including authorization as a fair use. <u>Lenz v. Universal Music Publishing Group</u>, 801 F.3d 1126, 1129 (9th Cir.

2015). In the eyes of this court, fair use is not "excused" by the law, but "authorized" by it, equal to a signed license agreement between the parties. Id. at 1132. Therefore, under the DMCA, a copyright holder *must* consider the existence of fair use before sending a takedown notification. Id. at 1133. Universal's failing, according to this decision, was that it did not form "any subjective belief about the video's fair use—one way or another—because it failed to consider fair use at all, and knew that it failed to do so." Id. at 1134.

Though Lenz is a Ninth Circuit case focused on the DMCA, the matter at bar demands an identical analysis to avoid, wherever possible, inconsistent and conflicting jurisprudence. Otherwise, the production "Who's Holiday" in the Second Circuit could be halted with less effort than removal of a video of "Who's Holiday" from YouTube. A cease-and-desist letter from a publisher that causes the loss of more than $75,000 of invested funds in a theatrical production should not be subject to a lesser duty of consideration than the notice-and-takedown process affecting a 29-second home video. Clearly, an analysis of the publisher's good faith is required. If a good faith intention by publisher is lacking, then the cause of action for tortious interference is well-founded. The fair use analysis, therefore, should occur before dismissing the claim for tortious interference.

**Fair Use and Theatrical Productions**

The good faith intentions of the publisher in issuing several cease-and-desist letters to the author, the director, and the landlord of the rented theater is especially pertinent given the Second Circuit's well-established acknowledgment of plays as a vehicle for fair use. Most recently, Judge Loretta A. Preska found the play "3C" to be a fair use of elements from the iconic television show, "Three's Company."

In Adjmi v. DLT Entertainment Ltd., 97 F.Supp.3d 512 (2015), Judge Preska found that the play used "the raw material of 'Three's Company' 'in the creation of new information, new aesthetics, new insights and understandings' and is 'the very type of activity that the fair use doctrine intends to protect for the enrichment of society.'" Id. at 529, quoting Castle Rock Entm't v. Carol Publ'g Grp., Inc., 150 F.3d 132, 141 (2d Cir. 1998). Even though she conceded that there, "is no question that '3C' copies the plot premise, characters, sets, and certain scenes from 'Three's Company'" the theatrical work was still "clearly a transformative use." Id. at 530.

Dr. Seuss Enterprises, L.P. is charged with the knowledge of Judge Preska's 2015 decision. As such, the Defendant must have considered the possibility of fair use in good faith and decided that Plaintiff's use of the Underlying Work was somehow more severe than David Adjmi's use of "Three's Company." Unless and until the Defendant's level of good faith is decided vis-à-vis Second Circuit precedent, a decision on the claim of tortious interference remains premature.

## Conclusion

For all these reasons, we respectfully request the Court to deny the Defendant's partial motion to dismiss the claim of tortious interference.

Respectfully submitted, this day February 17, 2017.

_____
David H. Faux, Esq.
Attorney for Amicus Curiae
Dramatists Legal Defense Fund