USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 4/7/17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------- x
                     :

MATTHEW LOMBARDO AND WHO'S    :   **ORDER GRANTING**
HOLIDAY LLC,                      :   **DEFENDANT'S PARTIAL**
                     :   **MOTION TO DISMISS AND**
           Plaintiffs,      :   **DENYING PLAINTIFFS'**
                     :   **CROSS-MOTION FOR**
       v.                  :   **DEFAULT JUDGMENT**
                     :

DR. SEUSS ENTERPRISES, L.P.,        :
                     :

           Defendants.    :   16 Civ. 9974 (AKH)
                     :

--------------------------------------------------------------- x

ALVIN K. HELLERSTEIN, U.S.D.J.:

        Plaintiffs Matthew Lombardo and Who's Holiday LLC brought this action

seeking a declaration that *Who's Holiday!* (the "Play"), a play authored by Lombardo, does not

infringe upon defendant Dr. Seuss Enterprises, L.P.'s copyright in the Dr. Seuss book *How the*

*Grinch Stole Christmas!* (the "*Grinch*"), on the ground that the Play constitutes fair use under the

Copyright Act. This opinion does not consider the merits of plaintiffs' fair use claim.

        Plaintiffs also assert a second cause of action, sounding in tort, which seeks

monetary damages for the costs plaintiffs incurred prior to their decision to halt production of the

Play. That decision was made following receipt of a series of cease-and-desist letters sent by

defendant. Defendant has moved to dismiss plaintiff's tort claim for failure to state a claim.

Plaintiffs, in turn, have filed a cross-motion for default judgment on their fair use claim, and

argue that defendant defaulted by failing to timely answer plaintiffs' fair use claim. For the

reasons stated herein, defendant's motion to dismiss the tort claim is granted, and plaintiffs'

motion for default judgment is denied.

## FACTUAL BACKGROUND

### I.    Procedural History

Plaintiffs' Complaint, filed on December 27, 2017, alleges two claims. The first claim concerns fair use under the Copyright Act; the second claim alleges a range of "tortious conduct," but does not explicitly identify the particular cause of action upon which relief is sought.

On February 3, 2017, Defendant filed a partial motion to dismiss, which seeks to dismiss plaintiffs' tort claim only. Defendant did not file an answer in response to plaintiffs' fair use claim. In its motion to dismiss, defendant interpreted plaintiffs' tort claim as one either for tortious interference with contract *or* tortious interference with prospective business relations, and argued that the claim should be dismissed under either theory.

Plaintiffs' opposition, filed on February 17, 2017, contended that the Complaint adequately states a tort claims for "injurious falsehood, defamation per se, and tortious interference with prospective business relations." In tandem with their opposition, plaintiffs also filed a cross-motion seeking default judgment on their fair use claim on the ground that defendant "willfully ignored Plaintiffs' fair use claim." Plaintiffs contend that defendant's partial motion to dismiss did not stay defendant's obligation to file an answer to the remaining claim concerning fair use, and that because defendant failed to answer, default judgment is warranted. In the alternative, plaintiffs seek a stay of defendant's motion to dismiss pending resolution of the fair use issue.

### II.    Relevant Facts

For purposes of constructing this factual summary, I have considered not only plaintiffs' Complaint, but also the documents referenced in the Complaint; namely, the cease-and-desist letters that form the basis of plaintiffs' tort claim. Plaintiffs do not object to the

2

Court's consideration of these letters, nor can they, for where "a plaintiff alleges a claim based on a written instrument," as is the case here, "the court may consider such an instrument in ruling on a Rule 12(b)(6) motion even if it was not attached to the complaint and made a part thereof." *Bill Diodato Photography LLC v. Avon Prod., Inc.*, 2012 WL 4335164, at *3 (S.D.N.Y. Sept. 21, 2012) (internal citations and quotation marks omitted). Also, because this opinion concerns the tort claims only, I have omitted many facts relevant to plaintiffs' fair use claim.

Defendant owns the copyright of Theodor S. Geisel's ("Dr. Seuss") book *How the Grinch Stole Christmas!* Compl. ¶¶ 5, 9-10. One of the characters in the Grinch is Cindy-Lou Who, a little girl who encounters the Grinch as he is stealing a Christmas tree from her home. *Id.* ¶ 11.

Plaintiff Lombardo is the author of *Who's Holiday!*, a 75-minute comedic play, in which a grown-up Cindy-Lou narrates – in rhyme – the story of her life since her fateful encounter with the Grinch. *Id.* ¶ 17. As it turns out, Cindy-Lou has led a troubled life: she has done time in prison and now lives in a "broken down trailer in the hills of Mount Crumpit." Plaintiffs describe the Play as a humorous juxtaposition between the "rhyming innocence" of the *Grinch* and a range of unsavory topics such as "profanity, bestiality, teen-age pregnancy, familial estrangement, ostracization and scandal, poverty, drug and alcohol abuse, the eating of a family pet, domestic violence and murder." Opp. at 4.

In July 2016, Lombardo formed a limited liability company, plaintiff Who's Holiday LLC, which began working on a production of the Play. Plaintiffs raised funds, engaged and paid various service providers, hired a director and an actress, purchaser a trailer for the set, and put down a $44,000 deposit to reserve an off-Broadway theatre. Performances were set to begin on November 2, 2016. *Id.* ¶¶ 28-29.

3

Beginning in July 2016, defendant's counsel sent a series of cease-and-desist letters to individuals, who defendant believed, were involved in the Play's production. *Id.* ¶¶ 30-34. On July 26, 2016, defendant sent a letter to Carl Andress, whom plaintiffs had hired to direct the play. Duvdevani Decl. Ex. A. The letter identified defendant's ownership in the *Grinch* and related trademarks, and advised that it "has recently come to our attention that, notwithstanding Dr. Seuss's exclusive and longstanding rights in and to the Dr. Seuss Intellectual Property, you appear to be directing a stage play based on or derived from the book *How the Grinch Stole Christmas!*" The letter stated that in light of the Play's promotional materials, which "impermissibly uses copyrighted material owned by Dr. Seuss," that Mr. Andress was "likely infringing on the proprietary rights of Dr. Seuss." Defendant warned that this "unauthorized use" of Dr. Seuss's intellectual property "could subject you to substantial liability," but this initial letter did not threaten litigation. Defendant demanded immediate action to discontinue the alleged infringement, but concluded the letter by stating that "if you believe that your use of the Dr. Seuss Intellectual Property is protected or otherwise non-infringing, please provide us with a copy of the script of the Infringing Work for our review." *Id.* After receiving no response from Mr. Andress, counsel for defendant sent two brief follow-up letters on August 22 and September 21, but again received no response. *Id.* Exs. B and C.

On September 27, 2016, defendant sent three additional cease-and-desist letters. These letters were sent to (1) Nick Eilerman of Foresight Theatrical, the production manager of the Play; (2) plaintiff Lombardo, the author of the Play; and (3) Gilbert Hoover of the Schubert Organization, the entity that owns the theater that plaintiffs had reserved to put on the Play. *Id.* Exs. D, E and F. These letters were similar in nature to the July 26 letter previously sent to Mr. Andress. In addition to setting out the basis for defendant's belief that the Play and related

4

promotional materials infringed on defendant's intellectual property, the September 27 letters also stated that "although it appears that you purport to rely on the assertion that this work is a parody for which permission is not required, we assure you that this reliance is misguided." Ex. E. The September 27 letters omitted the request for a copy of the Play's script, and instead warned that "if we do not receive your express written confirmation" of compliance with the letters' demands, "we will be forced to advise our client with respect to further legal action to resolve this matter." *Id.*

Plaintiffs allege that defendant "recklessly sent" these cease-and-desist letters, which "succeeded in halting performances of the Play for the 2016 holiday season." *Id.* ¶ 2. Specifically, as a result of the cease-and-desist letter sent to the Schubert Organization on September 27, 2016, the Schubert Organization gave plaintiffs notice that it was terminating the venue license agreement, and thereafter returned 90% of plaintiffs' $44,000 deposit. *Id.* ¶ 34. Plaintiffs then halted further production of the Play.

Thereafter, counsel for the respective parties engaged in discussions regarding the alleged infringement. On October 25, 2016, defendant's counsel sent an email stating that "we have now reviewed the Who's Holiday script ... in detail. This review did not assuage our concerns regarding the work." *Id.* ¶ 37. Defendant also advised that it disagreed with plaintiffs' position that a recent case supported plaintiffs' fair use argument. Plaintiffs contend that through this email, defendant admitted that it failed to read the allegedly infringing work or relevant case law prior to sending the cease-and-desist letters.

Plaintiffs' second cause of action, which is ambiguous as to the precise legal theory upon which relief is sought, is based solely on these cease-and-desist letters. Plaintiffs allege that "Defendants tortuously sent cease and desist letters without first reading the Play in

5

detail and considering in good faith whether the Play is non-infringing." Plaintiffs further allege that "by claiming that the Play infringed Defendant's rights, Defendant's communications falsely cast doubt on the lawfulness of the Play and were derogatory to Plaintiffs." *Id.* ¶¶ 59-60. Plaintiffs provide a chart setting out $55,861.92 in specific damages that plaintiffs incurred as a result of having to cancel the Play. Plaintiffs further allege that "Defendant's tortious conduct prevented or interfered with relationships between Plaintiffs and others," *id.* ¶ 62, but do not identify what those relationships were. Finally, plaintiffs allege that defendant's allegedly tortious conduct "caused Plaintiffs to suffer lost box-office receipts," and prevented plaintiffs from raising "additional capital from expectant and pledged investors." *Id.* ¶¶ 63-64.

## DISCUSSION

### I.    Default Judgment on Plaintiffs' Fair Use Claim is Unwarranted

The Second Circuit has "expressed on numerous occasions its preference that litigation disputes be resolved on the merits, not by default." *Cody v. Mello*, 59 F.3d 13, 15 (2d Cir. 1995). Default judgment is a "harsh remedy to be utilized only in extreme situations." *Brien v. Kullman Indus., Inc.*, 71 F.3d 1073, 1077 (2d Cir. 1995). Thus, "the extreme sanction of a default judgment must remain a weapon of last, rather than first, resort." *United States v. All Right, Title, & Interest in Real Prop.*, 2014 WL 7181021, at *1 (S.D.N.Y. Nov. 13, 2014) (quoting *Meehan v. Snow,* 652 F.2d 274, 277 (2d Cir.1981)).

Putting aside the fact that plaintiffs have not complied with any of the procedural requirements necessary to obtain a default judgment, *see* Local Rule 55, default judgment is unwarranted here because "*any* motion, particularly when the motion addresses a significant portion of the complaint ..., will suspend the time to answer any claim." *Ricciuti v. N.Y. City Transit Auth.*, 1991 WL 221110, at *2 (S.D.N.Y. Oct. 3, 1991). As one court explained, "[t]imely serving and filing a motion to dismiss under Fed. R. Civ. P. 12(b), precludes entry of

6

default. That the motions to dismiss may not have addressed every single claim purportedly raised by Plaintiffs in their Amended Complaint is irrelevant. A party may file a motion to dismiss only certain claims—*i.e.,* a partial motion to dismiss—and the filing of any motion under Rule 12 postpones a defendant's time to answer until fourteen days after the motion is decided." *Dekom v. N.Y.*, 2013 WL 3095010, at \*5 (E.D.N.Y. June 18, 2013) (internal citation and quotation marks omitted); *see also Barbagallo v. Marcum LLP*, 820 F. Supp. 2d 429, 443 (E.D.N.Y. 2011) ("[I]n the interest of judicial economy and avoiding piecemeal answers, a partial motion to dismiss will suspend the time to answer those claims or counterclaims that are not subject to the motion.") (internal quotation marks omitted).

In light of this authority, I decline plaintiffs' invitation to follow *Gerlach v. Michigan Bell Tel. Co.*, 448 F. Supp. 1168, 1170 (E.D. Mich. 1978), which held to the contrary. Because defendant timely filed a partial motion to dismiss, plaintiffs' motion for default judgment is denied.

## II. The Complaint Fails to Give Defendant Fair Notice of the Claims Asserted

A complaint "must give the court and the defendant fair notice of what [the] plaintiff's claim is and the grounds upon which it rests." *Cole v. John Wiley & Sons, Inc.*, 2012 WL 3133520, at \*7 (S.D.N.Y. Aug. 1, 2012) (internal quotation marks omitted). Although Rule 8 requires only a "short and plain statement of the claim showing that the pleader is entitled to relief," that statement must "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 119 (2d Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007)).

Plaintiffs' claim for recovery based on tort is alleged in a single count. Plaintiffs now contend that the Complaint "plainly" alleges three separate tort theories: tortious

7

interference with prospective business relations, injurious falsehood, and defamation. But the phrases "defamation" and "injurious falsehood" appear nowhere in the Complaint, and plaintiffs' allegation that "Defendant's communications falsely cast doubt on the lawfulness of the Play and were derogatory to Plaintiffs" is insufficient to put defendant on notice that plaintiffs intended to assert three separate and distinct tort claims. Nor is it proper for plaintiffs to have asserted these new legal theories in their opposition brief. *See Southwick Clothing LLC v. GFT (USA) Corp.*, 2004 WL 2914093, at \*6 (S.D.N.Y. Dec. 15, 2004) ("A complaint cannot be amended merely by raising new facts and theories in plaintiffs' opposition papers."); *Ace Arts, LLC v. Sony/ATV Music Pub., LLC*, 56 F. Supp. 3d 436, 451 (S.D.N.Y. 2014) (it is "axiomatic that the Complaint cannot be amended by briefs in opposition to a motion to dismiss.").

I decline to grant plaintiffs leave to amend their Complaint to properly allege the three tort theories referenced in plaintiffs' opposition. *See Campoli v. HealthExtras, Inc.*, 232 F. App'x 20, 22 (2d Cir. 2007) (affirming denial of leave to amend where complaint did not give defendant fair notice of putative breach of contract claim). Granting such leave would be futile because, as discussed below, plaintiffs' tort claims will fail as a matter of law regardless of how they are pled.

## III. Tortious Interference with Prospective Business Relations

To state a claim for tortious interference with prospective business relations, a plaintiff must allege that "(1) it had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to the relationship." *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 400 (2d Cir. 2006); *see also Lombard v. Booz-Allen & Hamilton, Inc.*, 280 F.3d 209, 214 (2d Cir. 2002) (requiring plaintiff under third element to show that "defendants acted for a wrongful purpose or used

8

dishonest, unfair, or improper means"). To satisfy the third element, "a plaintiff must allege that a 'defendant's conduct was motivated solely by malice or to inflict injury by unlawful means, beyond mere self-interest or other economic considerations.'" *S&L Vitamins, Inc. v. Australian Gold, Inc.*, 521 F. Supp. 2d 188, 217 (E.D.N.Y. 2007) (quoting *Shared Commc'ns Servs. of ESR, Inc. v. Goldman Sachs & Co.,* 803 N.Y.S.2d 512, 513 (1st Dep't 2005)). "[A]s a general rule, the defendant's conduct must amount to a crime or an independent tort. Conduct that is not criminal or tortious will generally be 'lawful' and thus insufficiently 'culpable' to create liability for interference with prospective contracts or other nonbinding economic relations." *Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 190 (N.Y. 2004).

"If a document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, control, and the court need not accept the allegations in the complaint as true." *TufAmerica, Inc. v. Diamond*, 968 F. Supp. 2d 588, 592 (S.D.N.Y. 2013); *see also Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.,* 369 F.3d 212, 222 (2d Cir. 2004) (discrediting allegation "belied" by letters attached to the complaint). Here, regardless of the facts alleged in the Complaint, plaintiffs' claim fails as a matter of law because the content of the cease-and-desist letters, as well as the context and sequence in which they were sent, make clear that defendant did not act for a wrongful purpose and did not use dishonest, unfair, or improper means when sending the letters.

Plaintiffs' central argument is that it was dishonest, unfair and improper for defendant to have sent the cease-and-desist letters without first reading the Play and evaluating whether it is fair use. However, the initial letter sent to the Play's director on July 26, 2016 makes clear that defendant was acting on publicly available information only, including a promotional flyer that indisputably utilizes the "highly stylized font associated with the works of

9

Dr. Seuss." Duvdevani Decl. Ex. A. Defendant requested a copy of the Play's script, but did not receive a response from the director. Plaintiffs point out that "the letters were sent to an email account not regularly checked by the director," but even accepting that as true, defendant sent two follow-up emails and waited over two months before sending additional cease-and-desist letters to the Play's author and production manager, as well as to the owner of the venue at which the Play was to be performed. Given this context, the fact that defendant had not yet obtained a copy of the Play's script is not evidence that defendant sent the letters in bad faith or using wrongful means.

Indeed, *nothing* in plaintiffs' Complaint or in the letters themselves suggest that defendant acted for a wrongful purpose or used wrongful means when sending the letters. But if "there are 'no allegations in the complaint capable of supporting a reasonable inference that ... defendant acted with the *sole purpose* of harming the plaintiff or used dishonest, unfair, or improper means,' then the claim should be dismissed." *RFP LLC v. SCVNGR, Inc.*, 788 F. Supp. 2d 191, 196 (S.D.N.Y. 2011) (quoting *Premium Mortg. Corp. v. Equifax, Inc.,* 583 F.3d 103, 107 (2d Cir. 2009)). The cease-and-desist letters reflect defendant's belief – based on publicly available information – that the Play likely infringed on defendant's intellectual property. Whether that belief was right or wrong, defendant did not send the letters for the sole purpose of injuring plaintiffs. For this reason alone, plaintiffs' tortious interference claim fails. *See RFP LLC*, 788 F. Supp. 2d at 196 (dismissing tortious interference claim where "only plausible inference to be made" was that defendants' decision to send cease-and-desist letter was "motivated at least in part by [defendants'] own economic interest."); *Radiancy, Inc. v. Viatek Consumer Prod. Grp., Inc.*, 138 F. Supp. 3d 303, 328 (S.D.N.Y. 2014) (letter notifying plaintiff of potential infringement cannot serve as basis for tortious interference claim where "there is

10

nothing from the letter that indicates that the sole purpose behind [defendant's] action was malicious or that it used dishonest, unfair, or improper means.").

A baseless threat of litigation may constitute wrongful means. However, "this is true only when (1) the [defendant] has no belief in the merit of the litigation, or (2) the defendant otherwise institutes or threatens to institute litigation in bad faith, intending only to harass the third parties and not to bring [its] claim to definitive adjudication." *Ace Arts, LLC v. Sony/ATV Music Pub., LLC*, 56 F. Supp. 3d 436, 451 (S.D.N.Y. 2014) (internal quotation marks and citations omitted). In light of the discussion above, plaintiffs have failed to make such a showing.

Because defendant did not send the cease-and-desist letters for a wrongful purpose or by using wrongful means, plaintiffs' tortious interference claim fails as a matter of law. I therefore need not address the parties' remaining arguments, such as whether cease-and-desist letters can ever form the basis of a tortious interference claim, or whether the letters were protected under the *Noerr-Pennington* doctrine.

## IV.   Injurious Falsehood

Under New York law, "the tort of injurious falsehood consists of (1) the knowing publication of false matter derogatory to the accused party's business; (2) of a kind calculated to prevent others from dealing with the business or otherwise interfering with its relations with other; and (3) to its detriment." *P. Kaufmann, Inc. v. Americraft Fabrics, Inc.*, 198 F. Supp. 2d 466, 471 (S.D.N.Y. 2002) (citing *Waste Distillation Technology, Inc. v. Blasland & Bouck Engineers,* 523 N.Y.S.2d 875, 877 (2d Dep't 1988)); *see also In Touch Concepts, Inc. v. Cellco P'ship*, 949 F. Supp. 2d 447, 483 (S.D.N.Y. 2013) (injurious falsehood "requires the knowing publication of false and derogatory facts about the plaintiffs business of a kind calculated to prevent others from dealing with the plaintiff, to its demonstrable detriment.") (internal quotation

11

marks omitted).

Plaintiffs' injurious falsehood claim fails for two reasons.

First, other than plaintiffs' general allegation that Defendant's letters "falsely cast doubt on the lawfulness of the Play and were derogatory to Plaintiffs," nothing in the Complaint or the letters themselves indicate that defendant knowingly or recklessly made false statements in the letters. The cease-and-desist letters contain allegations that the Play "impermissibly uses copyrighted material" and constitutes "improper use of the Dr. Seuss Intellectual Property." Plaintiffs cite these statements as examples of defendant's false disparagement because, according to plaintiffs, "the Play is fair use and Defendant cast doubt upon its lawfulness." But defendant's allegations are just that – allegations – and the letters are replete with phrases such as "upon information and belief," "likely infringing," and "it appears…," which indicate that defendant was setting out its *belief* regarding the legal status of the Play. This is not a false statement.

Nor did defendant act recklessly by sending the letters. As discussed above, defendant waited over two months before sending additional letters to third parties such as the Schubert Organization, and did so only after the Play's director failed to respond to the first three letters. Plaintiffs cite to *Lenz v. Universal Music Corp.*, 815 F.3d 1145 (9th Cir. 2015), for the proposition that the Copyright Act requires copyright holders to evaluate whether potentially infringing content constitutes fair use before sending a cease-and-desist letter. However, *Lenz* concerned "takedown notices" sent pursuant to the Digital Millennium Copyright Act ("DMCA"), not cease-and-desist letters such as the ones at issue here. As plaintiffs themselves acknowledge, the DMCA specifically requires a takedown notice to include a "statement that the complaining party has a good faith belief that the use of the material in the matter complained of

is not authorized by the copyright owner, its agent, or the law." 17 U.S.C. § 512(c)(3)(A)(v).
The Copyright Act contains no such requirement.

   Second, even if the letters did contain false statements, the injurious falsehood
claim would fail because plaintiffs have not alleged that the cease-and-desist letters were
"calculated to prevent others from dealing with the plaintiff." *In Touch Concepts*, 949 F. Supp.
2d at 483. As discussed above, the content and context of the letters make clear that defendant
was motivated by a desire to protect its intellectual property. Nothing suggests the letters were
sent for the purpose of disrupting plaintiffs' business relationships with third parties.

   Accordingly, plaintiffs' injurious falsehood claim is dismissed.

### V. Defamation

   "Under New York law, the elements of a defamation claim are (1) a defamatory
statement of fact, (2) regarding the plaintiff, (3) published to a third party, (4) that is false, (5)
made with the applicable level of fault, (6) causing injury, and (7) not protected by privilege." *In
Touch Concepts*, 949 F. Supp. 2d at 484. "Making a false statement that tends to expose a
person to public contempt, hatred, ridicule, aversion or disgrace constitutes defamation."
*Thomas H. v. Paul B.*, 18 N.Y.3d 580, 584 (N.Y. 2012). "In evaluating whether a cause of action
for defamation is successfully pleaded, the words must be construed in the context of the entire
statement or publication as a whole, tested against the understanding of the average reader, and if
not reasonably susceptible of a defamatory meaning, they are not actionable and cannot be made
so by a strained or artificial construction." *Dillon v. City of N.Y.*, 704 N.Y.S.2d 1 (1st Dep't
1999).

   "Generally, only statements of fact can be defamatory because statements of pure
opinion cannot be proven untrue." *Thomas H.*, 18 N.Y.3d at 584. "Distinguishing between fact
and opinion is a question of law for the courts, to be decided based on what the average person

13

hearing or reading the communication would take it to mean." *Davis v. Boeheim*, 24 N.Y.3d 262, 269 (N.Y. 2014) (internal quotation marks omitted). To resolve whether a statement is fact or opinion, a court must consider three factors: "(1) whether the allegedly defamatory words have a 'precise meaning' that is 'readily understood'; (2) whether the statement can be proven as true or false; and (3) 'whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal . . . readers or listeners that what is being read or heard is likely to be opinion, not fact.'" *Thomas H.*, 18 N.Y.3d at 584 (internal citations omitted). The New York Court of Appeals has adopted a "holistic approach to this inquiry." *Davis*, 24 N.Y.3d at 270. "Rather than sifting through a communication for the purpose of isolating and identifying assertions of fact, the court should look to the over-all context in which the assertions were made and determine on that basis whether the reasonable reader would have believed that the challenged statements were conveying facts about the . . . plaintiff." *Id.* (internal quotation marks omitted).

Applied here, a "reasonable reader" of the letters, considering not only their substance but the "over-all context" in which they were sent, could not believe that defendant sent the letters in order to assert false statements of fact about plaintiffs or the Play. Rather, defendant sent the letters to notify the recipients of its legal opinion that the Play infringed on defendant's intellectual property. For example, the letter sent to the Schubert Organization states that "upon information and belief, the Infringing Work appears to be based on or derived from the book *How the Grinch Stole Christmas*." Defendant's belief that the Play amounts to infringement may ultimately turn out to be incorrect, but defendant's good faith assertion of its legal position does not constitute a statement of fact sufficient to establish a defamation claim. *See S.L.C. Consultants/Constructors, Inc. v. Raab*, 578 N.Y.S.2d 284, 285 (4th Dep't 1991)

14

(dismissing defamation claim where letter sent to competitors was "merely a statement of plaintiff's legal position with regard to its employment agreement with defendant.").

   Plaintiffs' defamation claim also fails because defendant's statements are privileged under *Front, Inc. v. Khalil*, 24 N.Y.3d 713, 715 (N.Y. 2015), in which the New York Court of Appeals held that "statements made by attorneys prior to the commencement of litigation are ... protected by a qualified privilege." Under this qualified privilege, "if the statements are pertinent to a good faith anticipated litigation, no cause of action for defamation can be based on those statements." *Id.* However, this privilege is lost "where a defendant proves that the statements were not pertinent to a good faith anticipated litigation," and does not "protect attorneys who are seeking to bully, harass, or intimidate their client's adversaries by threatening baseless litigation or by asserting wholly unmeritorious claims." *Id.* at 720.

   Here, the cease-and-desist letters are privileged because – whether or not defendant ultimately prevails on the fair use issue or the infringement counterclaims it intends to file – defendant had a good faith basis for sending the cease-and-desist letters based on the publicly available information about the Play, and defendant's allegedly defamatory statements were pertinent to that potential litigation. *See Feist v. Paxfire, Inc.*, 2017 WL 177652, at *6 (S.D.N.Y. Jan. 17, 2017) (applying *Front* and dismissing defamation claim premised on attorney's pre-litigation statements to the press).

   Accordingly, plaintiffs' defamation claim is dismissed.

## CONCLUSION

   For the reasons stated herein, defendant's motion to dismiss plaintiffs' tort claims is granted, and plaintiffs' motion for default judgment is denied. Plaintiffs' tort claims are dismissed with prejudice and without leave to amend. The Clerk shall terminate the motions

15

(Dkt. Nos. 14, 26).

      Plaintiff shall file an Amended Complaint, alleging only their claim of fair use, and without the tort claims, by April 21, 2017.  Defendant shall file an answer by May 5, 2017.

      The parties shall appear for a status conference on June 2, 2017 at 10 a.m.  The parties shall be prepared to discuss whether plaintiffs' fair use claim should be resolved on a Rule 12(c) motion, and if not, the discovery that may be appropriate.

      SO ORDERED.

Dated:      April 7, 2017
             New York, New York          ALVIN K. HELLERSTEIN
                                   United States District Judge