J. GREENBERGER, PLLC
*Counsel for Plaintiffs*
Jordan Greenberger, Esq.
195 Montague Street, 14th Floor
Brooklyn, NY 11201
Tel: (718) 502-9555
jordan@jgreenbergerlaw.com

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MATTHEW LOMBARDO and WHO'S HOLIDAY LIMITED LIABILITY COMPANY, | Index No. 16-cv-9974-AKH |
| Plaintiffs, | |
| -against- | |
| DR. SEUSS ENTERPRISES, L.P., | |
| Defendant. | |

**PLAINTIFFS' REPLY MEMORANDUM
IN FURTHER SUPPORT OF THEIR
<u>RULE 12(c) MOTION FOR JUDGMENT ON THE PLEADINGS</u>**


On the brief:   Jordan Greenberger, Esq.

# TABLE OF CONTENTS

I.  Discovery Is Not Necessary .......................................................................... 1

II. The Play Is Fair Use ..................................................................................... 4

  A. The Play Is *Not* A True "Sequel" .......................................................... 5

  B. The Play Is *Not* A Condensed, Comical Version Of *Grinch* ................. 7

  C. The Play Is *Not* A Satire That Uses *Grinch* For Unrelated Purposes .... 7

  D. The Play Is *Not* A Verbatim Copying Of *Grinch* .................................. 8

III. Defendant's Trademark Arguments Ignore *ComicMix* And The Recent Dismissal Of Defendant's Claims In That Case ............................................................ 10

IV. Conclusion ................................................................................................. 10

# TABLE OF AUTHORITIES

CASES

*Adjmi v. DLT Entm't Ltd.*, 97 F. Supp. 3d 512 (S.D.N.Y. 2015) ........................... 1, 3, 4

*Authors Guild v. Google, Inc.*, 804 F.3d 202 (2d Cir. 2015) ............................... 10

*Berlin v. E.C. Publications, Inc.*, 329 F.2d 541 (2nd Cir. 1964) ......................... 5

*Brownmark Films, LLC v. Comedy Partners* 682 F.3d 687 (7th Cir. 2012) ............. 1, 3, 4

*Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569 (1994) ................................. 1, 4, 6

*Cariou v. Prince*, 714 F.3d 694 (2 Cir. 2013) ................................................. 1, 3, 4

*Castle Rock Entm't Inc. v. Carol Pub. Grp.*, 150 F.3d 132 (2nd Cir. 1998) ........... 4

*CCA & B, LLC v. F+W Media Inc.*, 819 F. Supp. 2d 1310 (N.D. Ga. 2011) ............. 7

*Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003) ............... 10

*Dr. Seuss Enterprises, L.P. v. ComicMix LLC*, 2017 WL 2505007 (S.D. Cal. June 9, 2017) .. 3, 10

*Dr. Seuss Enterprises, L.P. v. Penguin Book USA, Inc.*, 109 F.3d 1394 (9th Cir. 1997) ... 8

*Elsmere Music, Inc. v. NBC*, 482 F. Supp. 741 (S.D.N.Y. 1980), *aff'd* 623 F.2d 252 (2d Cir. 1980) ......................................................................................... 4

*Keeling v. New Rock Theater Prod., LLC*, 2011 WL 6202796 (S.D.N.Y. Dec. 13, 2011) .... 2

*Leibovitz v. Paramount Pictures Corp.*, 137 F.3d 109 (2d Cir. 1998) ................... 5

*Mattel Inc. v. Walking Mountain Prods.*, 353 F.3d 792 (9th Cir. 2003) ................ 4

*Mattel, Inc. v. Pitt*, 229 F. Supp. 2d 315 (S.D.N.Y. 2002) ............................................................... 4

*MCA, Inc. v. Wilson*, 677 F.2d 180 (2d Cir. 1981) ...................................................................... 5, 8

*Metro-Goldwyn-Mayer, Inc. v. Showcase Atlanta Cooperative Productions, Inc.*, 479 F. Supp. 351 (N.D. Ga. 1979) ................................................................................................................. 3, 7

*Myrieckes v. Woods*, 2009 WL 884561 (S.D.N.Y. Mar. 31, 2009) ................................................. 7

*Salinger v. Colting*, 641 F. Supp. 2d 150 (S.D.N.Y. 2017) ............................................................ 5

*SunTrust Bank v. Houghton Mifflin Co.*, 268 F.3d 1257 (11th Cir. 2001) ............................. 5, 7, 9

*TCA Television Corp. v. McCollum*, 839 F.3d 168 (2d Cir. 2016) ................................................. 9

### RULES & STATUTES

Fed. R. Civ. P. 12(c) ................................................................................................................. 1, 10

Lanham Act § 43 ............................................................................................................................ 10

### DOCKETED CASE

*Adjmi*, No. 14-cv-568-LAP (S.D.N.Y.) ............................................................................................ 2

Plaintiffs respectfully submit this reply brief in further support of their Rule 12(c) motion for judgment on the pleadings. In short, discovery is not necessary; the Play speaks for itself. The Court need only compare the Play with *Grinch* to come to the conclusion that it is fair use.

**I.      DISCOVERY IS NOT NECESSARY**

Discovery is not required for the Court to conclude that the Play is fair use because the Court need only compare it with *Grinch*. Judge Preska did not require discovery in *Adjmi v. DLT Entm't Ltd.*, 97 F. Supp. 3d 512 (S.D.N.Y. 2015) to find that the subject play was fair use and grant the playwright's Rule 12(c) motion, nor did the Seventh Circuit in *Brownmark Films, LLC v. Comedy Partners* 682 F.3d 687 (7th Cir. 2012) to find at a fleeting glance that the *South Park* episode was a parody of an internet viral video. In *Cariou v. Prince*, 714 F.3d 694 (2 Cir. 2013), the Second Circuit's "observation of [the defendant's] artworks themselves convince[d]" the Court "of the transformative nature of" twenty-five of the photographs; the Court looked at the photographs and concluded that the defendant's composition, presentation, scale, color palette, and media were "fundamentally different and new compared to the [plaintiff's] photographs." *Id.*, at 706.

Defendant actually supports Plaintiffs on this point. First, Defendant offers the Broadway show *Avenue Q* and the Mel Brooks movie *Spaceballs* as examples of parodies of, respectively, the children's television show *Sesame Street* and the *Star Wars* movies. Opposition Memorandum [Doc. 51] ("Opp. Memo."), pp. 1 and 14. How did Defendant reach that conclusion – did Defendant take depositions, exchange documents, serve requests for admission, or obtain expert disclosure etc.? No. Of course not. Defendant reviewed the works and compared them to the spoofed originals. Without any discovery whatsoever, and based on its reasonable perception or parodic character [*Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 582 (1994)], Defendant concluded that *Avenue Q* and *Spaceballs* are fair use. Second, there was

1

no discovery when Defendant sent its pre-action cease and desist letters, counterclaimed for infringement, or argued extensively in opposition to this motion that the Play is not fair use.  If Defendant, without discovery and simply based upon the words of the Play alone, can come to the conclusion that the Play infringes *Grinch* then surely the Court can also come to its own conclusion without the need for discovery.

Defendant is playing lip-service to the alleged need for discovery, apparently in effort to needlessly increase the cost of litigation and further delay the Play from being produced and performed.[1]  There is no need for the discovery Defendant identifies.  Opp. Memo., p. 10.

- "…all versions of the website and advertisement for the Play…"  Defendant alleges that the Play infringes *Grinch* and the Cindy Lou-Who and Grinch characters; Defendant's counterclaims do not not allege that the website or advertisement infringe its copyright.[2]  Further, it is plainly apparent that neither is substantially similar to Dr. Seuss's work.

- "…additional versions of the Play…" and "…*all* drafts of the Play…"  Unpublished drafts of the Play reflecting Mr. Lombardo's creative process are not the subject of the claims; nor would they alter "the amount of *Grinch* that Plaintiffs took" in the version of the Play that is the subject of the action.[3]  In making a fair use determination, the Court need only review the

---

[1] *See* the policy issues raised in the Dramatist Legal Defense Fund's amicus brief, including how a "Goliath" copyright owner like Defendant can silence the free speech rights of a "David" like Mr. Lombardo.  Doc. 47-1, at Section IV.C.  The Dramatist Legal Defense Fund also filed an amicus brief in *Adjmi*, No. 14-cv-568-LAP (S.D.N.Y.), at Doc. Nos. 64-65.

[2] Defendant also notes that the Play references other Dr. Seuss works, but Defendant has not counterclaimed for infringement of those other works.

[3] Defendant baldy asserts that its counsel was sent "a different version of the Play" before the action was commenced, but Defendant does not identify how the versions are allegedly different, or even if they are different how those changes would alter the fair use analysis.  Opp. Memo., p. 10.  Additionally, Defendant's selective quoting of *Keeling v. New Rock Theater Prod., LLC*, 2011 WL 6202796 (S.D.N.Y. Dec. 13, 2011) (Opp. Memo., pp. 10-11) is misleading because

version presented to it (as confirmed in footnote 6 of the case Defendant cites, *Metro-Goldwyn-Mayer, Inc. v. Showcase Atlanta Cooperative Productions, Inc.*, 479 F. Supp. 351 (N.D. Ga. 1979)).  In *Adjmi*, Judge Preska reviewed the script at issue, not drafts.

- "…the set and costume designs…"  The alleged need for this type of discovery was expressly rejected by Judge Preska in *Adjmi*, 97 F.3d at 531 ("discovery is likewise unnecessary to evaluate stylistic factors like setting, costume, style, pace, and tone.  Given the overwhelmingly transformative nature of the substance, the first factor would likely weigh in favor of a finding of fair use even if certain elements, like setting, costume, style, and pace, were exactly the same").  The Play identifies the physical set as an old, run-down trailer.  There is no old, run-down trailer in *Grinch*.  As to costumes, the 40-something Cindy Lou-Who character in the Play is described on the first page as having "style-challenged attire and now poorly permed bleached blond hair," which is dissimilar to the image of young Cindy-Lou Who in *Grinch*.

- "…deposition testimony from relevant witnesses…"  Again, there were no depositions in *Adjmi*.  Defendant seems to want depositions to obtain "intent" evidence, but the author's "intent" is not necessary for a fair use determination.  *Cariou*, 714 F.3d at 707; *Adjmi*, 97 F.Supp. 3d at 532, fn. 13.  The content of the Play is what matters, like the content of the works in *Adjmi*, *Brownmark* and *Cariou*.  If the Play had been written by a young child completely unaware of copyright law, the words of the Play itself still would be a fair use.

- "…market harm…"  While Defendant may have recently been offered the opportunity for discovery on this topic in *Dr. Seuss Enterprises, L.P. v. ComicMix LLC*, 2017 WL 2505007 (S.D. Cal. June 9, 2017), the work at issue in that case is a "mash-up" for which there may be a

---

there the question of fact was whether the plaintiff's parody script was substantially similar to her former collaborator's parody script for the same play and whether the defendant actually used that script at all for its live performances.

legally protectable derivative market.  However, Defendant cannot control the derivative market for pure parodies.  *Campbell*, 510 U.S. at 592 ("the unlikelihood that creators of imaginative works will license critical reviews or lampoons of their own productions removes such uses from the very notion of a potential licensing market.").  If Defendant could, then the fair use doctrine would be gutted.  Defendant may choose to restrict the derivative market (like in the Seinfeld trivia book case; *Castle Rock Entm't Inc. v. Carol Pub. Grp.*, 150 F.3d 132 (2nd Cir. 1998)), but not at the expense of Plaintiffs' free-speech rights.

Lastly, Defendant's argument that Plaintiffs "cherry-picked" documents (Plaintiffs' and the non-party ticket seller's website identifying the Play as a parody) and attached them to their answer to the counterclaims ignores: (1) this is a motion for judgment *on the pleadings* so the Court may consider exhibits annexed *to the pleadings*; and (2) whether or not Plaintiffs identified the Play as a "parody" does not alter the fact that the Play is a parody, *Campbell* 510 U.S. at 583, n. 17 (though, it does confirm that Plaintiffs did not attach the term "parody" as a post hoc rationalization in response to Defendant's infringement claim).[4]

## II.   THE PLAY IS FAIR USE

This case is aligned with the fair use findings for: the play in *Adjmi*; the *South Park* episode in *Brownmark*; twenty-five of Richard Prince's photographs in *Cariou*; the usage of Barbie dolls in *Mattel Inc. v. Walking Mountain Prods.*, 353 F.3d 792 (9th Cir. 2003) and *Mattel, Inc. v. Pitt*, 229 F. Supp. 2d 315 (S.D.N.Y. 2002); Saturday Night Live's "I Love Sodom" song in *Elsmere Music, Inc. v. NBC*, 482 F. Supp. 741 (S.D.N.Y. 1980), *aff'd* 623 F.2d 252 (2d Cir. 1980); the movie poster for the *Naked Gun* movie in *Leibovitz v. Paramount Pictures Corp.*, 137

---

[4] The parodic character of the original playlet that Mr. Lombardo wrote also was plainly apparent to the audience, including the theater professional who reviewed the work and called it a parody. http://www.broadwayworld.com/connecticut/article/BWW-Review-CHRISTMAS-ON-THE-ROCKS-at-TheaterWorks-20151207.

4

F.3d 109 (2d Cir. 1998); Mad Magazine's parody of Tin Pan Alley songs in *Berlin v. E.C. Publications, Inc.*, 329 F.2d 541 (2nd Cir. 1964); and *The Wind Done Gone* in *SunTrust Bank v. Houghton Mifflin Co.*, 268 F.3d 1257 (11th Cir. 2001). The cases upon which Defendant primarily relies are distinguishable.

### A. The Play Is *Not* A True "Sequel"

Relying upon *Salinger v. Colting*, 641 F. Supp. 2d 150 (S.D.N.Y. 2017), Defendant argues that the Play is an unauthorized sequel to *Grinch* and therefore is not fair use. *Salinger* is not an "aha case" for Defendant (Opp. Memo., p. 21) because the infringing work there was a true sequel that the defendant only claimed was a parody in response to being sued.[5] Mr. Lombardo did not simply age the Cindy Lou-Who and Grinch characters, give them identical personality traits from their youth, and then tell a new story in the same style but from the perspective of an older generation. The characteristics of Cindy Lou-Who and the Grinch in the grotesquely farcical Play are not apparent from Dr. Seuss's *Grinch*; the Play's characters are grossly distorted, and from the plain-language of the Play it is apparent that it is not a "true" sequel.

In *Salinger*, the author J.D. Salinger brought a copyright infringement case alleging that the defendants' novel, *60 Years Later: Coming Though the Rye* ("*60 Years*"), was a derivative of Salinger's *The Catcher in the Rye* ("*Catcher*"), and that the protagonist in *60 Years*, named "Mr. C.," was an infringement of the Holden Caulfield character from *Catcher*. In granting Mr.

---

[5] *MCA, Inc. v. Wilson*, 677 F.2d 180 (2d Cir. 1981), cited by Defendant, also involved a defendant who crafted a fair use defense only after being sued. *Id.*, at 183-84. Plaintiffs have asserted that the Play is fair use from day one, and proactively commenced this action.

5

Salinger's motion for a preliminary injunction,[6] Judge Batts found a likelihood of success on the merits because *60 Years* was a true sequel (and was originally marketed as such), rather than fair use. In *60 Years*, the Holden Caulfield character and society had simply aged. The sequel's Mr. C. had the same readily apparent characteristics and tendencies as the Caulfield character in *Catcher*. *Id.*, at 258-59. Mr. C's characteristics "were abundant, and perhaps even central to the narrative of *Catcher*" and the Caulfield character in *Catcher*. *Id.*, at 261. Mr. C. had "similar or identical thoughts, memories, and personality traits to Caulfield, often using precisely the same or slightly modified language from that used by Caulfield in *Catcher*." *Id.* at 263-64. The "plain purpose" of *60 Years* was "to satisfy Holden's fans' passion" for the character. *Id.* at 260.

The same could not be said here. The Play does not simply rehash one of the critical extant themes of *Grinch*, nor does the Play use "nearly identical supporting characters, settings, tone, and plot devices to create a narrative that largely mirrors that of" *Grinch*. *Id.*, at 260, 264. Cindy Lou-Who only briefly appears in *Grinch* (which is narrated in the third-person), and when she does her character is limited to that of a sweet and innocent little Who that finds the Grinch stealing a Christmas tree. Contrast that with the Play's Cindy Lou-Who, who in narrating the Play describes how she became pregnant from pre-marital sex, roasted the family pet for dinner, killed her husband, and went to jail. In the Play, she is a comical version – markedly different from the true Cindy Lou-Who from *Grinch*. Similarly, the Play's Grinch is a lazy and abusive husband who is markedly different than the book's character. Neither the Play's Cindy Lou-Who nor Grinch characters is an "old tune" in the sound of a "new genre." *Campbell*, 510 U.S. at 599 (Kennedy, J., concurring). Their characteristics in the Play are neither abundant nor

---

[6] The injunction was later vacated by the Second Circuit because the District Court had applied the wrong standard in evaluating irreparable harm. 607 F. 3d 68 (2nd Cir. 2010).

central to the narrative of *Grinch*, and whatever passion fans have for their personality traits in *Grinch* will not be satisfied by the Play. Defendant argues that the Play uses Dr. Seuss's "exact" characters, but the characters are not exactly identical. The Play's characters have not merely aged; they are outrageously, if not shockingly, different.[7]

Moreover, even if considered a "sequel," that does not mean that the Play is not fair use. A work characterized as a sequel can be a fair use, *CCA & B, LLC v. F+W Media Inc.*, 819 F. Supp. 2d 1310 (N.D. Ga. 2011), and a parody may use "the very same copyrighted characters, settings, and plot" as the original. *SunTrust*, 268 F.3d at 1267.

### B. The Play Is *Not* A Condensed, Comical Version Of *Grinch*

Another case that Defendant relies upon, *MGM, Inc. v. Showcase Atlanta Coop. Prods., Inc.*, *supra*, also is distinguishable. In that case, the defendant's play "Scarlett Fever" was held not to be a fair use of *Gone With The Wind* (GWTW) because, in addition to the setting, characters, situations and relationships being "basically the same," the defendant's play had a nearly identical story line as GWTW, had near-verbatim dialogue as GWTW, and the impression of the play "undoubtedly [gave] to anyone viewing it or reading the script is that it is a version of [GWTW]." *Id.*, at 356. In other words, the play at issue there was simply a musical adaptation of GWTW, with some comedy added. That does not describe Plaintiffs' Play.

### C. The Play Is *Not* A Satire That Uses *Grinch* For Unrelated Purposes

Defendant's success in stopping an unauthorized derivative work in in the highly-criticized *Cat NOT In The Hat* case does not mean that Defendant should have success here. *Dr.*

---

[7] Defendant selectively quotes *Myrieckes v. Woods*, 2009 WL 884561, at *5 (S.D.N.Y. Mar. 31, 2009) to make it appear as though the work at issue was not fair use because it was a sequel. Opp. Memo., p. 15. But the issue in that case was whether the plaintiff's state law claims were pre-empted by the Copyright Act, and Defendant omitted Magistrate Judge Katz statement that the plaintiff had also pleaded that the defendant's work was "essentially" the plaintiff's novel.

7

*Seuss Enterprises, L.P. v. Penguin Book USA, Inc.*, 109 F.3d 1394 (9th Cir. 1997). The difference between that case and this case is that there the defendant's work did not comment or criticize the underlying Dr. Seuss work; instead, the defendant plopped the O.J. Simpson story into Dr. Seuss's *The Cat In The Hat* and used the Dr. Seuss work as a humorous vehicle for telling a contemporary news story. But, that is not what the Play does – Mr. Lombardo did not take a topical news event and randomly select a well-known Christmas tale as a vehicle to tell his own completely unrelated story in a humorous manner. The Play's content refers to *Grinch*.

Thus, *MCA, Inc. v. Wilson* is again distinguishable because there the song at issue, entitled *Cunnilingus Champion of Company C*, was "musical plagiarism" that "was neither a parody or burlesque"[8] of the underlying copyrighted song, entitled *Boogie Woogie Bugle Boy of Company B*, "nor a humorous comment on the music of the '40's." 677 F.2d at 185 (citing the District Court, 425 F. Supp. 443 (S.D.N.Y. 1976)). The Play does not extensively copy *Grinch* and merely substitute dirty words. It is plainly apparent that Mr. Lombardo used significant creative effort to write the Play, and did not merely use *Grinch* and add raunchy humor to get attention or avoid the drudgery of working up something fresh.[9]

### D. The Play Is *Not* A Verbatim Copying Of *Grinch*

*Grinch*'s "heart" are the words written by Dr. Seuss and the pictures he drew; Plaintiffs copied neither, and using the same names is not the dividing line between infringement and fair

---

[8] The District Court in *MCA*, quoting a dictionary, defined "burlesque" that is fair use as, "That species of literary composition, or of dramatic representation, which aims at exciting laughter by caricature of the manner or spirit of serious works, or by ludicrous treatment of their subjects." 425 F. Supp. at 452, fn. 16.

[9] Defendant argues that the Play "does not poke fun of the Seussian rhyming style" or "ridicule" that style. Opp. Memo., p. 13. But, juxtaposing swear words, sexual innuendo and adult themes with rhyming couplets is humorous and pokes fun at *Grinch*'s rhymes.

8

use especially when the characters are so drastically different.[10]  Plaintiffs did not copy *Grinch* or its characters in their entirety and simply place them in a new setting.  And, Defendant does not have an exclusive monopoly on rhyming.

The Play does not copy the text of *Grinch*, and its setting (a trailer on the hills of Mount Crumpit) is not depicted in *Grinch*.  Nor does the Grinch character appear in the Play, other than through Cindy Lou-Who's dialogue and from her perspective.  Defendant also incorrectly describes the Play's first fourteen pages as simply recounting *Grinch*: in the early pages of the Play, Cindy Lou-Who introduces herself to the audience, expresses that she was ousted from Whoville, takes a call from a guest who will not be coming, shares a cocktail with an audience member, chastises latecomers in the audience, gets hit by snowballs from delinquent juveniles, changes her dress, and smokes marijuana.  To the extent that Mr. Lombardo's character retells the basic story of *Grinch* (like *The Wind Done Gone* retold key elements from GWTW; *Suntrust*, 268 F.3d at 1267), it is from her perspective, and it is necessary for the parodic purpose of reacquainting the audience with the original.

Plaintiffs did not simply copy-and-paste *Grinch* into the middle of an otherwise unrelated play, like the "Who's On First" routine that the Second Circuit addressed in *TCA Television Corp. v. McCollum*, 839 F.3d 168 (2d Cir. 2016).  Nor did Plaintiffs copy-and-paste into the alleged advertisement(s) the cartoon image of Cindy Lou-Who as she appears in *Grinch*.  On its

---

[10] In *Suntrust*, "many" of the characters from GWTW were re-named, but the 11th Circuit did not state that "all" of their names were changed.  268 F.3d at 1267.  Additionally, there are a number of theatrical parodies that have used the original characters' names: SILENCE THE MUSICAL (based on *Silence of the Lambs*), SPAMILTON (based on *Hamilton*), FORBIDDEN BROADWAY (parody of multiple Broadway shows), and DOG SEES GOD (parody of the *Peanuts* characters).  Further, courts have found that copyrights in characters have been infringed even when the names have been changed.

9

face, Mr. Lombardo had a "justification for the taking" and therefore any use of *Grinch* was transformative fair use.  *Authors Guild v. Google, Inc.*, 804 F.3d 202, 215 (2d Cir. 2015).[11]

### III.   DEFENDANT'S TRADEMARK ARGUMENTS IGNORE *COMICMIX* AND THE RECENT DISMISSAL OF DEFENDANT'S CLAIMS IN THAT CASE

In opposition, Defendant attempts to sweep under the rug the recent *ComicMix* decision, where the Southern District of California dismissed nearly identical trademark claims by Defendant (who is the plaintiff in that case).  Defendant has offered absolutely no basis why the Court should not adopt that decision in relation to dismissing the trademark related claims.  Defendant's dislike for the *ComicMix* decision, just like Defendant's dislike for Mr. Lombardo's humor, is not enough for the trademark-related claims to survive.  *See also* Plaintiffs' Moving Memorandum [Doc 46], at Section V.  Lastly, in attempting to distinguish *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003), Defendant mischaracterizes its own Lanham Act § 43(a) allegations.  *See* Counterclaims, ¶ 61.

### IV.   CONCLUSION

Based on the foregoing, and the moving papers, Plaintiffs' Rule 12(c) motion for judgment on the pleadings should be granted so that Plaintiffs may move forward with a production of the Play this coming season.

Dated: August 5, 2017               J. GREENBERGER, PLLC
       Brooklyn, New York        *Counsel for Plaintiffs*
                                                            /s/ Jordan Greenberger
                                         Jordan Greenberger, Esq.
                                         195 Montague St., 14th Fl.
                                         Brooklyn, NY 11201
                                         (718) 502-9555
                                         jordan@jgreenbergerlaw.com

---

[11] Defendant mischaracterizes the *Authors Guild* decision.  Opp. Memo., p. 18, fn. 18.  The *Authors Guild* Court did not hold that Google was required to "comment" on the underlying works when it found Google's use to be a transformative fair use that provided otherwise unavailable information about the originals.